The next case on the docket, People v. Garrett, is it Rottau? Rottau? It's Rottau. Rottau. Rottau. Thank you. I'm going to start today discussing point three of the appeal and then move on to point four and return to the first two if there's time in the ten minutes. So there are basically three writings that we're concerned with today. There's one that the court knows about and that the jury knew about, and that is a note that Kim Jee wrote that her mother found, which is really the reason we're here today. This note started the chain of events that started the prosecution in the eventual conviction. That note essentially said, I'm sad because my mother is having sex with Garrett and so am I. That's what that note said. That note was dated March 22, 2008. Now, the error here were these two other writings. It was a notebook that had other writings very close in time. One of these writings was from March 16, 2008, just days before the note that started this case. This note was very, very different. It was more the note of just a typical child. I hear my mom and Garrett having sex. Ew. It literally says, ew, ew. You know, she's like disgusted and sort of upset by this, but it's really a more typical child's response to hearing something like that. There's another note that's about two and a half months before that, December 3, 2007. This one's different. This is one that's sort of filled with hatred and hostility towards Mr. Tuttle. He's a jerk. I hate him. Call me fat. Lots of hatred, lots of hostility in that particular note. Now, the last ones while we're here, the other ones that are in here, the cross-examination that was allowed in the case all centered around the third note. The basic facts of the case, which the court's aware of, is that the child is confirming the note. She initially said, no, no, that's not what I meant. Denied it. Later at some point said, oh, it is true. Later said, no, no, it's not. I did it because I'm jealous. I have a crush on him. She had an explanation. He had walked in on me, this compromising masturbation thing. So since she denied it, later on went back to that same interview and said, well, maybe it did happen. So there was all of this back and forth. The cross-examination that was allowed was essentially just around that. And the crush and this explanation about why she broke it. So the reason this is error is because these areas that were unexplored due to leaving this out of court, the trial court essentially found that these other notes, these other writings by the same victim were irrelevant, not relevant at all in the case. Now, we know what is the way to test. When we have an accuser in a case, how do we test that? It's through cross-examination. It's through evidence that reveals bias. It's through evidence that reveals motive. It's through inconsistency. Now, what do we have with the jury did the hearing? We have a writing that is inconsistent with the writing that the jury did the hearing. Didn't get to ask her about that. Didn't get to point out to the jury that this note just a few days before is completely inconsistent with this note that's the centerpiece of the state's case. Taking it all into context, that would be very valuable, the fact that there was so much inconsistency anyway in the state's case itself. Then there's just this other note that is classic, a classic bias and motive type impeachment material that she actually has hostility toward and that she actually hates him. There's nothing more, in a sense, classic than that. The defendant wasn't allowed to cross-examine her with these writings. The jury didn't know about them. And the standards of abuse of discretion, the standard for reversal would be, what kind of case was this? Was this a close case? Well, we know this was. This is a case where there's a huge amount of inconsistency back and forth. So now there's a new explanation for that. But the other thing we have is physical evidence that was also inconsistent with the victims that happened. Could you keep your voice up just a little bit, please? I apologize. Sometimes I need to adjust my microphone. That actually is recording. It isn't an amplifier. All right. So if you could just keep it up a little bit, thank you. Let's look at the lens of the case. We have an accuser who told adults different things at different times over time. We have no physical signs of this type of abuse that would happen to a tentacle. The doctor said there's no physical manifestation whatsoever of this particular type of abuse. On the other hand, we have someone who, the accused, who filed the house's letter December 5th. Has no history of this whatsoever. The jury struggled to convict. The jury was deadlocked 6-6. Took something like 13 hours, a day long. The court held them until like 10 o'clock at night. So they struggled to convict. So the question for the court is whether giving the jury this additional information, if given in a fair trial, would it have affected the outcome trial? And the answer, I think, is yes. So moving on to the fourth point, the sentencing point. The state has essentially conceded that for this particular crime, that a factor inherent in the offense, which is the age of the victim, can't be used to aggravate or enhance this particular sentence. And that's People v. Wyeth of 1986 Supreme Court case. Now, the actual sentencing, the prosecutor argued three factors. He argued serious harm, he argued deterrence, and that error within a position of trust. The court ended up giving him, 32 years in prison, 8 years consecutive for counsel. Now, after a motion to reduce or modify this file, the court was in a position to explain the sentence that it gave back in the original sentencing. And at that time he said, significant to the court was the age of the victim. And then he listed a couple of the other factors after that. So, I read the state's brief as essentially conceding that that was, that if he considered that factor, that was improper. Now, what we seem to be disagreeing about is whether this is reversible in this particular case. The standard in the Wyeth case is whether this court is unable to determine from the record what weight this improper factor was given. Unable to determine. Here, the court actually says it was significant. Significant to this court's determination was. So, I would argue this is not a case where you can tell from the record it had no effect whatsoever. There would be cases like that. You can imagine cases where a court would say, say something and say, actually it had no effect on my judgment or something like that. This is a court case where the court unambiguously said this was significant to my decision. And so, in those cases, the court must demand purposes. I believe so. Thank you, counsel. Argument for the state. Thank you, Your Honor. Good morning. Thank you to the court. Counsel. For the record, this is Patrick Daly on behalf of the state. I'm going to look at my arguments for the two issues that counsel discussed today. If the court has any questions about the other two issues, please feel free to interject and ask, and I'll answer any concerns or questions that you may have. The first issue relates to whether the court has used its discretion in denying the defendant's request to use certain diary entries that were made by the victim in this case. A little bit of a procedural history here is probably important. The diary entries were disclosed, I believe, to the state approximately about six days before trials began. Counsel indicated that he had had the diary notes in his possession for quite a long time. I think he said years. I'm not sure that's quite right. But he had them for a while. The state objected, and they wound up having a hearing. The court ultimately ruled that he was going to bar the use of the notes on the basis of relevancy. This is prior to the trial? This is prior to the trial, I believe. Yes, it's prior to the trial. No, excuse me. I'm wrong. I believe it was brought up after the victim had testified. Excuse me. I stand corrected. After the victim testified, then the issue was brought up. They had argued before trial, and essentially the relevance of the issue was held in reserve until the victim testified, and then they brought it up again. There was discussion. The court ultimately ruled that it was not going to allow counsel to use the diary entries. Did the court ever rule on the timing issue of the disclosure? The court didn't specifically rule on that, but I think that it's pretty clear. I believe the court actually made some kind of offhand comment, and I'm not really concerned about the timing of it, and I think probably the court's view is that it wasn't prejudiced in the state in terms of the timing. Its focus was principally on the relevancy objection from the state, and that's how the court ultimately ruled. There are, at the time of the offer of proof that was made, counsel had gone through what these diary entries stated. It's important to note that these diary entry notes are not in the record. The court had made mention to counsel that it should be copies of it that are incorporated into the record. They're not there. So essentially what we have are our defense counsel's representations of what these diary notes say through the offer of proof. The diary entry notes state, I love you, Garrett. I'm looking at the quotation from Mr. O'Gara here. I swear Garrett and Mom are really serious. They flirt, and I think they get B-U-S-Y, or I mean sex. There's noise upstairs that won't stop, and the only way or conclusion that dogs are wagging their tails or Mom and Garrett are having sex. It's an exclamation mark. There's some diagrams of anatomical parts, and then on the back cover of the diary was an I heart Garrett, kind of schoolgirl sort of writings. That was the only thing that was brought up at the time of the offer of proof during the trial, and that's important because counsel here talks a little bit about the hostility note. That actually never came up until the defendant's post-trial motion, so it was never incorporated into the offer of proof. So obviously there's a waiver aspect up here as well because obviously that was not brought up. I don't think ultimately waiver is important in determining whether or not that was correctly excluded because I think that that has problems in and of itself with regards to relevancy. But the focus on this, what we have here I think is indisputably, these are hearsay statements that are being made by the victim, their writings. And so when we look at evidence and we look at what it is that is the purpose of evidence, in this case it's either going to serve one of two purposes, or maybe both. One is substantive evidence of the victim's thoughts, if you will, or number two as impeachment material. Interestingly enough, when we look at the back and forth between the trial court, defense counsel, and state, it never was really made manifest and clear exactly what the purpose of these notes was going to be. Counsel sort of vacillated somewhat between substantive and impeachment. Ultimately, I think it sort of honed in more on the latter. But now on appeal, the defendant seems to be arguing more in terms of its substantive merit of essentially corroborating or establishing, as I believe this counsel argued here, the victim's mindset or some sort of retaliatory mindset against the defendant, which would provide you with some motivation to make the accusations that you did. Well, I mean, number one, when we talk about this in terms of substantive, it is hearsay. And if we're going to say that the value of the notes is to establish some particular fact or issue, then they are out-of-court statements, and they're not admissible as an exception to the hearsay rule under any rule that I'm aware of. Not only that, I think the bigger problem, and it's one that the court essentially focused in on as well, is that it's really cumulative. I mean, and you will see, and this court will look at the victim's testimony, and the victim acknowledged that she had feelings for the defendant, that she was in love with the defendant, that she was angry at the defendant, and that she was angry at the defendant because he was having apparently sexual intercourse with her mother. So the motivation, I suppose, to introduce these things substantively, had already been essentially confirmed by the victim. And in fact, I believe Mr. O'Gara made reference to it when discussing this, that, well, you know, this court may find it to be, you know, cumulative, I don't know, something along those lines. So even defense counsels sort of seem to think that, okay, she already kind of covered the territory that these notes would encompass. So is it maybe perhaps cumulative? Well, yes, it most certainly is. As impeachment material, I would agree, and look at it in backing such notes as this, these diaries do have or could have impeachment value. But impeachment value has necessarily certain foundational aspects. One, that you're going to impeach something, and that's the problem here. There wasn't anything to be impeached. If the value was to impeach her to show that she had feelings for the defendant that were manifest or expressed in these diary entries, well, she already admitted to that. So there's no discernible purpose or reason that these notes could or should be used. They're either inadmissible hearsay and not admissible substantively, or they're not proper impeachment because there's nothing to impeach. So the evidence that she had affection for the defendant was by her direct testimony? Absolutely correct. She was unambiguous. She acknowledged she was in love with him and was angry. So when you look at these notes and what they do is, I mean, obviously they're expressing anger and they're expressing affection sort of at the same time. All of which she already admitted to. Now, if she denied that she had any feelings for him or denied that she was angry at him or anything like that, I can understand that these diary entries can be fairly powerful impeachment evidence. But that's not what happened. And so I believe that the court, in exercising its abuse of discretion, because this court is well aware of the standard of abuse of discretion, it has to be something so arbitrary and unreasonable that no reasonable person would rule in the way that the court did. Clearly the court's reasoning here was reasonable, correct, not arbitrary, and certainly congruent with the facts as they were presented to the court. Now, let's talk a little bit about this hostility note. In this hostility note, which appears in the post-trial motion, it states, my dead stepdad, Garrett, is a, pardon the language, is a fucking jerk because he called me fat and I'm 11. Well, Garrett, you can kiss my hairy fucking ass, okay? I'm not fat on all sides. I even shit. Well, I hate Garrett now. Bye, you jerk. Loser, loser. Well, I mean, there's a couple of problems here. Number one, obviously, as we discussed earlier, there's a forfeiture aspect of this. I mean, it's not being raised as part of any sort of substantive offer of proof. In fact, we don't even still have the diary entries here. And number two, the other problem is that there's a remoteness problem. It appears that these diary entries were made months prior to the victim making the accusations. So the fact that she's angry at the defendant because he called her fat doesn't have any reasonable or rational relationship to why she would make up accusations of sexual assault against the defendant later on. Real quickly about the men I have left with regards to sentencing issue, I do consult that it is improper and inappropriate for a court to consider a fact inherent in the offense in sentencing. However, that's just simply because that may come up in some fashion that doesn't render the fact of the sentence improper. In this case, when the court entered the sentence, it did so considering proper factors that were presented to the court, the state's factors of aggravation, the defendant's mitigating factors. When the court entered the consecutive eight-year sentences, it did so without any regard or consideration or attentiveness to the victim's age. The only time that that issue came up was in the motion to reconsider where the court made something of an extemporaneous comment that I considered all these things and then sort of lumped age in there as well. So I would just ask this court to look at that totality of the circumstances, particularly in view of what the specific factors the court did consider when it actually entered the sentence that was then later being challenged in the motion to reconsider, and find that under those circumstances, it was not sufficiently integrated, whatever that extemporaneous comment was, into the sentencing decision that should prompt this court to remand, particularly in light of the fact that the defendant received a near minimum sentence for the offense. In fact, about half of the state was. Does the court have any questions? No. Thank you for your time. Rebuttal argument. Hello. On point three, just to address the preservation issue, the notebooks themselves are not in the record, but I think this issue got spoken about by the parties over pages and pages of transcript. It was first raised by the state. There was a lengthy discussion before trial about the issue. Later, right after the witness got off the stand, they went back up and discussed it again. More discussion. What the state is actually saying is that somehow the court ruled on this without having actually read the statements. I think we're only talking about four sentences here. It's not a huge document. I take it what Mr. Daly just said was verbatim what the note said, and that's somewhere in the record on the offer of proof. So even though we don't have as our record the actual handwritten note, we've got what the note said verbatim. Correct. And right, we're having counsel reading it into the record as he's speaking to the judge. He did leave out the hostility statement while they were discussing it, but given the circumstances where they're at the bench, there's only a few statements of issue. The court ruled on it. I think it's fair to assume the court actually read all the statements. It's not hearsay. The truth of the matter asserted here would be whether Garrett is a jerk, whether the statements in there are true or not, the substance. Here they're being offered for a different purpose. Whether something is hearsay does not go to their substance. It goes to what purpose you're offering them for. Here they're being offered for the purpose of impeachment, so to show bias, to show motive. They're not cumulative to what was presented. Nowhere in the impeachment effort that was made was this discussion of the inconsistency between the note that was in the case and just days before this other sort of childlike response to the same thing. And as far as the other one, that was only two and a half months before. The state speaks about how remote this hostility note was, but it was in December of 2007, and this all happened in mid-March to late March of 2008. So that's not a lot of time. That's not remote in time. As to the fourth point, one fact I would like to bring to the court's attention is while the state did not list age as one of its aggravating factors at sentencing, the age was something that the state talked about a lot during the sentencing hearing. The state mentioned the age of the victim at least three times. And at the motion to reconsider, it wasn't the kind of extemporaneous statement that the state tries to describe. It was the court saying, here's my ruling. Significant to my ruling was, one, the age of the victim. Two, these are the proper factors. It wasn't just an offhand comment. It was a very considered reason for what the sentence was, and he did use the past tense, was. So I don't see any significance to the fact that he was explaining what the sentence was versus saying it at the time he was getting his sentence. I think the court has time for questions. All right. Thank you, counsel. Thank you. We'll take this case under advisement, issue a written ruling.